DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

DAROFF DESIGN, INC. and DDI,          )
ARCHITECTS, PC,                        )
                                       )
            Plaintiffs,                )
                                       )   Civil No. 2014-74
            v.                         )
                                       )
THE NEIGHBORHOOD ASSOCIATION,         )
INC.,                                  )
                                       )
            Defendant.                 )
_____)

ATTORNEYS:

**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, U.S.V.I.
    *For the plaintiffs,*

**James M. Derr, Esq.**
Law offices of James M. Derr
St. Thomas, U.S.V.I.
    *For the defendant.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court is the motion of The Neighborhood
Association, Inc. to dismiss the complaint for lack of subject-
matter jurisdiction or, in the alternative, for summary
judgment. Also before the Court is the motion of Daroff Design,
Inc. and DDI Architects PC to dismiss the Neighborhood
Association's counterclaim.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 2

## I.   FACTUAL AND PROCEDURAL HISTORY

Daroff Design, Inc. and DDI Architects PC (collectively,
"DDI") are corporations incorporated in Pennsylvania. They each
maintain their principal places of business in Philadelphia,
Pennsylvania. DDI provides architectural and interior design
services.

The Neighborhood Association, Inc. (the "Association") is a
corporation incorporated in the U.S. Virgin Islands. The
Association has its principal place of business in the U.S.
Virgin Islands. The Association is an association of owners of
fractional memberships at the Ritz Carlton in St. Thomas.

DDI was hired by the Association to provide services
related to certain refurbishing projects, including the
refurbishment of the Association's "Members' Club Lounge." DDI
ultimately performed more services than expected, at a higher
cost. A substantial portion of the fees demanded by DDI remain
unpaid. The parties dispute whether these increased fees stem
from DDI's failure to exercise due care in their designs or stem
from decisions made by the Association.

DDI and the Association mediated DDI's claims for unpaid
professional fees. The mediation was unsuccessful. Subsequently,
the Association filed a two-count complaint in the Superior
Court of the Virgin Islands (the "Superior Court Action"). Count

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 3

I asserts a claim for negligent design against DDI. Count II
asserts a claim for breach of contract against DDI.

On August 26, 2014, DDI filed a six-count complaint against
the Association in this Court. Count I asserts a claim for
foreclosure of a construction lien. Count II asserts a claim for
breach of contract (AIA Agreement). Count III asserts a claim
for fraud in the inducement. Count IV asserts a claim for breach
of oral contract. Count V asserts a claim for unjust
enrichment/*quantum meruit*. Count VI asserts a claim for accounts
stated.

The Association filed a motion to dismiss DDI's complaint.
That motion was denied on May 8, 2015. On June 23, 2015, the
Association filed its answer to DDI's complaint and a
counterclaim. In its counterclaim, the Association asserted two
claims. Count I asserts a claim for negligent design against
DDI. Count II asserts a claim for breach of contract against
DDI.

On July 23, 2015, DDI moved to dismiss the Association's
counterclaim for failure to state a claim. Shortly thereafter,
on July 27, 2015, the Association filed a motion to dismiss
DDI's complaint for lack of subject matter jurisdiction, or in
the alternative, for summary judgment.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 4

## II.   DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Title 28, section 1332(a) provides, in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States . . . ." 28 U.S.C. 1332(a)(1). The jurisdictional amount in controversy can be satisfied if the amount of damages exceeds $75,000. *See id.; Williams v. Tutu Park Ltd.,* No.1999-138, 2005 U.S. Dist. LEXIS 10591, at *5, 2005 WL 1313431 (D.V.I. May 11, 2005).

In cases where the amount in controversy is in issue and jurisdictional disputes surround:

> factual matters . . . , the preponderance of the evidence standard is appropriate for resolving the dispute. By contrast, . . . when relevant facts are not in dispute or findings have been made, the district court should adhere to the legal certainty test . . . Under the legal certainty test . . . when it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount, the case must be dismissed.

*Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007)(internal quotations and citations omitted). The burden is on "the challenger to subject matter jurisdiction . . . to prove, to a legal certainty, that the amount in controversy

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 5

could not exceed the statutory threshold." *Id.* at 195 (emphasis removed).

**B. Motion to Dismiss for Failure to State a Claim**

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker,* 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.,* 127 S.Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 6

that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.,* 127 S.Ct. at 1965).

**C. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy,* 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 7

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls,* 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

### A. Association's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction

"The district courts . . . have original jurisdiction of . . . civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States . . . ." 28 U.S.C. 1332(a)(1).

The Association argues that the Court lacks subject-matter jurisdiction over this matter because less than $75,000 is in controversy. It reasons that: (1) the complaint alleges that $146,696.42 is owed; (2) that number was reached by doubling the amount otherwise due; (3) there was no agreement to double the amount due; and (4) as such, an amount of $73,348.21 is owed, accepting as true the other allegations in the complaint.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 8

The Association does not dispute that at least $73,000 was billed to the Association. (ECF No. 24, at 2.) As such, the amount in controversy may be satisfied if the record demonstrates that at least $2,000 more is in controversy.

The Court need not look far to resolve this issue. Attorney's fees in this action may exceed $2,000. Indeed, DDI has demanded attorney's fees in its complaint. The contract between the parties (the "AIA Agreement")--which was incorporated into the complaint--permits DDI to recover attorney's fees. Specifically, the AIA Agreement provides that:

> DDI's collection charges shall be paid for by the Client. Collection charges shall include (but not be limited to) any and all costs DDI may incur in its collection effort, *including legal fees*, court costs and expenses and DDI's staff hourly billing rates for DDI staff time working on the collection process.[1]

---

[1] In its complaint, DDI alleges that:

> in August of 2013, the parties ultimately entered into a written agreement which was comprised of an American Institute of Architects ("AIA") Owner-Architect Agreement, as well as DDI's proposal to the NA for the Project and DDI's General Terms and Conditions, which were both incorporated therein by reference ("AIA Agreement"). A copy of the AIA Agreement is attached as **Exhibit 1.**

(Complaint, ECF No. 1, at ¶ 24.) The Association has admitted that Exhibit 1 is the contract between the parties. (ECF No. 18, at ¶ 24 ("[The Association] . . . admits that the contract between the parties, Exhibit 1 to the Complaint, was executed in August, 2013.").)

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 9

(ECF 1-1, at pg. 28)(emphasis supplied). As such, under the
terms of the AIA Agreement, DDI may recover attorney's fees if
it prevails.

"If a . . . contract provides for attorney fees, then such
fees may be used in determining the amount in controversy."
*Sedivy v. Richardson*, 485 F.2d 1115, 1123 (3d Cir. 1973). The
Court considers potential attorney's fees when calculating the
amount in controversy. *Cf. Suber v. Chrysler Corp.*, 104 F.3d
578, 585 (3d Cir. 1997), *as amended* (Feb. 18, 1997)(holding the
same when an award of attorney's fees was mandatory under state
law). Having considered the claims alleged in this action, the
Court concludes that there is no legal certainty that no more
than $2,000 in attorney's fees could be awarded to DDI.

Accordingly, the Court holds that it may exercise subject-
matter jurisdiction over this matter. *See St. Paul Mercury
Indem. Co,* 303 U.S. at 288-89.

**B. DDI's Motion to Dismiss the Association's Claims**

DDI argues, in part, that the Association's counterclaim
must be dismissed because the claims were untimely filed.

After DDI filed its complaint, the Association filed a
motion to dismiss. (ECF No. 4.) That motion was denied on May 8,
2015. (ECF No. 6.) When a motion to dismiss is denied, the
"responsive pleading must be served within 14 days after notice

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 10

of the court's action . . . ." Fed. R. Civ. P. 12(a)(4)(A).

"Pursuant to the Federal Rules of Civil Procedure, . . . [a] responsive pleading is an answer, counterclaim, or motion to dismiss." *Jonathan H. v. The Souderton Area Sch. Dist.*, 562 F.3d 527, 529 (3d Cir. 2009). Generally, "[t]he only way to file a counterclaim in a Federal court is to file an answer containing a counterclaim." *United States v. Finn*, 239 F.2d 679, 684 (9th Cir. 1956). Therefore, the Association was required to file its answer and counterclaim by May 22, 2015. *See* Fed. R. Civ. P. 12(a)(4)(A). The Association did not file its answer and counterclaim until more than a month later, on June 23, 2015. (ECF No. 18.) As such, the Association's answer and counterclaim failed to comply with the timing requirements in Federal Rule of Civil Procedure 12(a) ("Rule 12(a)"). *See* Fed. R. Civ. P. 12(a)(4)(A).

Nevertheless, the Association protests that Federal Rule of Civil Procedure 13(a) ("Rule 13(a)") exempts its counterclaim from Rule 12(a)'s timing requirements. Rule 13(a) provides:

**(a) Compulsory Counterclaim.**

**(1)** *In General.* A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:

**(A)** arises out of the transaction or occurrence that

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 11

> is the subject matter of the
> opposing party's claim; and
>
> **(B)** does not require adding
> another party over whom the
> court cannot acquire
> jurisdiction.
>
> **(2) *Exceptions.*** The pleader need not state
> the claim if:
>
> > **(A)** when the action was
> > commenced, the claim was the
> > subject of another pending
> > action; or
> >
> > **(B)** the opposing party sued on
> > its claim by attachment or other
> > process that did not establish
> > personal jurisdiction over the
> > pleader on that claim, and the
> > pleader does not assert any
> > counterclaim under this rule.

Fed. R. Civ. P. 13(a).

The Association asserts that when this action was commenced, its claims were pending in an action in the Superior Court of the Virgin Islands. On that basis, the Association argues that it is not constrained by the timing requirements in Rule 12(a). In essence, it would seem that the Association proceeds on the assumption that the time within which it must file its counterclaim is limitless.

The Association's argument is devoid of merit. Rule 13(a)(1) is a general rule addressing whether a party must assert a counterclaim in a filed pleading. Rule 13(a)(2)

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 12

provides the exception to that rule. Rule 13(a) in no way

supersedes the requirements of Rule 12(a). Moreover, it is

unclear to the Court how Rule 13(a) could apply when no timely

pleading was filed.

Having concluded that the Association's objection is

without merit, the Court finds that the answer and counterclaim

were untimely. Because no request has been made for the Court to

accept the untimely pleadings, the Court will treat them as

nullities.

Furthermore, when no timely responsive pleading is filed, a

party is in default even if there has been no formal entry of

default. *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130

F.2d 185, 187 (3d Cir. 1942). "[A] defendant who defaults . . .

admits all 'well-pleaded' factual allegations contained in the

complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645

F.3d 114, 137 (2d Cir. 2011); *see also* Fed. R. Civ. P.

8(b)(6)("An allegation--other than one relating to the amount of

damages--is admitted if a responsive pleading is required and

the allegation is not denied.").

As such, the Association has currently admitted all of the

well-pleaded allegations in DDI's complaint.

Federal Rule of Civil Procedure 55(c) ("Rule 55(c)")

governs setting aside defaults. It provides that "[t]he court

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 13

may set aside an entry of default for good cause . . . ." Fed.

R. Civ. P. 55(c). The Court

> consider[s] the following factors in exercising its
> discretion in granting or denying a motion to set
> aside a default under Rule 55(c) . . . : (1) whether
> the plaintiff will be prejudiced; (2) whether the
> defendant has a meritorious defense; (3) whether the
> default was the result of the defendant's culpable
> conduct.

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195

(3d Cir. 1984). Here, the Association has not asked the Court to

set aside the default or addressed the factors that the Court

must consider before setting aside a default.

Accordingly, the Court will dismiss the Association's

counterclaims as untimely. If the Association wishes to pursue

its claims, it may follow the proper procedures and petition the

Court to set aside its default.

## C. Association's Motion for Summary Judgment

The Association seeks summary judgment on Counts Three,

Four, and Five of DDI's complaint.

### i.   Count Three: Fraud in the Inducement

In Count Three, DDI alleges a fraud in the inducement

claim. In pertinent part, DDI alleges that:

> 90. On March 12, 2013, Mr. Cutrona advised DDI's Mr.
> Rappaport that Mr. Cutrona would be a single point
> of contact for DDI on the Project, and that DDI would
> not be working for a "committee."

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 14

> 91. Mr. Cutrona knew that representation to be false
> at the time he made it and intended that DDI rely
> and act upon his false representation.
>
> 92. DDI was ignorant as to the falsity of the
> representation at the time Mr. Cutrona made it and
> relied on the false representation to its detriment
> by agreeing to work on the Project, and entering
> into a contract for the same, where Mr. Cutrona was
> not the single point of contact and, instead, the
> Project was run by a committee.

(ECF No. 1, at ¶¶ 90-92.)

The Association moves for summary judgment on Count Three.
In support of its motion, the Association directs the Court to
the AIA Agreement. The Association contends that DDI's fraud in
the inducement claim is barred by the gist of the action
doctrine because the representations that underlie the fraud
claim were incorporated into the AIA Agreement.

> The gist of the action doctrine is a theory under
> common law "designed to maintain the conceptual
> distinction between breach of contract claims and
> tort claims." *eToll, Inc. v. Elias/Savion Adver.,
> Inc.,* 811 A.2d 10, 14 (Pa.Super.Ct.2002). The
> doctrine is policy-based, arising out of the concern
> that tort recovery should not be permitted for
> contractual breaches. *Glazer v. Chandler,* 414 Pa.
> 304, 200 A.2d 416, 418 (1964). Thus, while the
> existence of a contractual relationship between two
> parties does not prevent one party from bringing a
> tort claim against another, the gist of the action
> doctrine precludes tort suits for the mere breach of
> contractual duties unless the plaintiff can point to
> separate or independent events giving rise to the
> tort. *See Air Prods. & Chem., Inc. v. Eaton Metal
> Prods. Co.,* 256 F.Supp.2d 329, 340 (E.D.Pa.2003).
> Generally, courts apply the gist of the action
> doctrine when the claims are

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 15

> (1) arising solely from a contract between
> the parties; (2) where the duties
> allegedly breached were created and
> grounded in the contract itself; (3) where
> liability stems from a contract; or (4)
> where the tort claim essentially
> duplicates a breach of contact claim or
> the success of which is wholly dependent
> on the terms of a contract.

> *eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d
> 10, 19 (Pa.Super.Ct.2002) (internal citations
> omitted).

*Addie v. Kjaer*, 737 F.3d 854, 865-66 (3d Cir. 2013).

Turning to the terms of the contract, the AIA Agreement

provides that:

> The Owner shall identify a representative authorized
> to act on the Owner's behalf with respect to the
> Project.

> The Owner shall render decisions and approve the
> Architect's submittals in a timely manner in order
> to avoid unreasonable delay in the orderly and
> sequential progress of the Architect's services.

> The Owner's representative is Mr. Salvatore M.
> Cutrona.

(ECF No. 1.1, at § 5.7.)

As this Court has previously noted in *dicta*:

> The distinction between a fraudulent inducement
> claim and a fraud claim based on a parties' failure
> to perform has been deemed "crucial" with respect to
> the application of the gist of the action doctrine.
> *Air Products & Chem. Inc. v. Eaton Metal Products
> Co.,* 256 F.Supp.2d 329, 341 (E.D.Pa.2003); *see also
> Hart v. Arnold,* 2005 884 A.2d 316, 341

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 16

> (Super.Ct.2005)(applying Pennsylvania law). This
> difference has been found significant because fraud
> in the inducement claims are much more likely to
> implicate a social policy against fraud independent
> of the contractual requirements to which the parties
> have bound themselves. *Id.*
>
> However, the allegation of a fraudulent inducement
> claim does not automatically preclude the operation
> of the gist of the action doctrine. "[P]romises made
> to induce a party to enter into a contract *that*
> *eventually become part of the contract* itself cannot
> be the basis for a fraud-in-the inducement claim
> under the gist of the action doctrine." *Freedom*
> *Props., L.P. v. Lansdale Warehouse Co.,* Civ. No. 06-
> 5469, 2007 U.S. Dist. LEXIS 57116, at *17 (E.D.Pa.
> Aug. 3, 2007)(emphasis supplied; citations omitted).

*Addie v. Kjaer*, No. CIV. 2004-135, 2011 WL 1841131, at *2-3

(D.V.I. May 13, 2011)(footnote omitted).

Here, the promise allegedly made to induce DDI into
entering the contract was subsequently incorporated into the
contract. That promise and related obligation are intrinsic to
the contract at issue here. Significantly, the circumstances
that form the basis for the dispute between DDI and the
Association all stem from the "contractual requirement to which
the parties have bound themselves." *See id.* As such, the Court
finds that the Association has satisfied its burden of
establishing that there is no dispute of material fact and that
it is entitled to judgment as a matter of law.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 17

The burden now shifts to DDI to establish that there is a dispute of material fact or that judgment is not appropriate as a matter of law. DDI does not adduce any contradictory evidence. Instead, it argues that the Association is not entitled to judgment as a matter of law because a fraud in the inducement claim is generally collateral to the terms of a contract. However, as the Court noted in *Addie v. Kjaer*, a fraud in the inducement claim is not collateral to the contract when, as here, the representation is incorporated into the contract. *Id.*

Accordingly, the Court will grant summary judgment in the Association's favor on Count Three.

### ii.   Count Four: Breach of Oral Contract

In Count Four, DDI alleges a breach of contract claim. In pertinent part, DDI alleges that:

> 95. A valid oral contract exists between the NA and DDI whereby the NA offered to pay DDI double the amount of DDI's earned professional fees if DDI were to keep working on the Project-despite the NA's lack of timely payment to DDI up to that point in time-and if DDI would accept payment after March 31, 2014, which offer DDI accepted.

> 96. The NA has materially breached that contract by, *inter alia,* failing to pay DDI double its outstanding earned professional fees.

(ECF No. 1, at ¶¶ 95-96.)

The Association moves for summary judgment on Count IV on the basis that there was no oral agreement to double DDI's

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 18

bills. In support of its contention that there was no such

agreement, the Association directs the Court to the affidavit of

Salvatore Cutrona, Sr. ("Cutrona"). Cutrona was the President

and a member of the Board of Directors of the Association. (ECF

No. 24-3, at ¶ 2.) In his affidavit, Cutrona asserts that:

> 5. [At a meeting on October 24, 2015, he, Karen
> Daroff, and Robert Hilton] . . . discussed several
> options for payment for additional work that
> Daroff claimed had been done on the project. I
> told her that no payment would be made until the
> errors claimed had been properly addressed in
> billings to date. However, if for some reason
> DDI was correct that we would discuss payment
> options, including payment by and or after year-
> end. One of the payment options discussed was
> possible deferral of payment to the end of
> the year end and possible deferral to the end of
> March 2014. In considering the latter payment
> option, discussion about possibly doubling the
> amount of the actual billings, if The
> Neighborhood Association, Inc., claims were
> invalid was proposed. I told Ms. Daroff and Mr.
> Hilton that I did not have the authority to
> commit to any of the proposals, and that the
> decision would have to be made by the
> Neighborhood Association Board of Directors. I
> agreed to discuss the matter with the Board and
> get back to them with the Board's decision.
>
> 6. On October 28, 2013, I received an email from
> Robert Hilton confirming our discussions and
> acknowledging that I would need to discuss any
> payment options with the Board. Attached to the
> Motion to Dismiss as Exhibit 2 and incorporated
> herein by reference is a true and correct copy of an
> email from Mr. Hilton confirming the foregoing.
>
> 7. Also a part of that email thread is my immediate
> response to Mr. Hilton objecting that the
> Neighborhood Association Board had never authorized
> over $ 100,000 in additional work on the project and
> instructing Daroff to stop all work on the project
> until the issue was resolved.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 19

> 8. The Neighborhood Association Board of Directors
> never authorized me to accept any of the payment
> options discussed during that October 24, 2013
> meeting. Instead, we continued to
> have communications with Daroff regarding the status of
> Daroff's performance, including Daroff's errors in
> dimensioning certain items of work that resulted in
> additional cost to The Neighborhood Association.[2]

(*Id.* at ¶¶ 5-8.)

Significantly, however, the Association is currently in default. Therefore, it has admitted all allegations in DDI's complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

In relevant part, the complaint alleges that

> 63. . . . [O]n October 24, 2013, Mr. Cutrona came
> to DDI's offices to ask DDI to recognize that
> the NA was short on cash flow and offered that
> if DDI would agree to provide more additional
> services, DDI would be paid for its invoiced
> fees on or before March of 2014, and the NA

---

[2] DDI contends that the Court may not consider this affidavit because: (1) it fails to comply with Virgin Islands procedural law; and (2) it is a sham affidavit.

Valid federal statutes that prescribe procedural rules apply in federal court in diversity cases even if they conflict with local law. *See Stewart Org., Inc*, 487 U.S. at 26-27, 32. Federal law--specifically, 28 U.S.C. § 1746--provides rules for when a document may function as an affidavit in federal court. *See* 28 U.S.C. § 1746. Cutrona's affidavit complies with 28 U.S.C. § 1746.

"A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Here, the Cutrona affidavit is offered in support of the Association's motion for summary judgment. As such, the sham affidavit rule does not apply. *See id.* If there is any inconsistency between the Cutrona affidavit and other evidence, the Association should direct the Court's attention to that other evidence to show that there is a dispute of material fact.

Accordingly, the Court will consider Cutrona's affidavit.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 20

> would pay DDI double its earned and invoiced
> professional fees.
>
> 64. DDI accepted that offer.

(ECF No. 1, at ¶¶ 63-64.) Because the Association has admitted
these allegations, there is a dispute of material fact and the
Association is not entitled to judgment as a matter of law.
As such, the Association has not met its burden of showing that
there is no dispute of material fact and that it is entitled to
judgment as a matter of law.

Accordingly, the Association is not entitled to summary
judgment on Count Four.

### iii. Count Five: Unjust Enrichment/*Quantum Meruit*

In Count Five, DDI alleges a claim for unjust
enrichment/*quantum meruit*. The Association moves for summary
judgment on Count V. In support of its motion, it directs the
Court to the AIA Agreement. The Association contends that it is
entitled to summary judgment on this claim because the parties
agree that there was a valid written agreement.

A claim for unjust enrichment or *quantum meruit* cannot be
brought "where an express contractual agreement exists between
the parties." *See Cacciamani & Rover Corp. v. Banco Popular De
Puerto Rico*, No. S.CT.CIV. 2013-0063, 2014 WL 4262098, at *2-*3
(V.I. Aug. 29, 2014). Here, there is a valid written agreement

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 21

between the parties. As such, the Association has satisfied its

burden of showing that there is no dispute of material fact and

that it is entitled to judgment as a matter of law.

The burden shifts to DDI to demonstrate that there is a

dispute of material fact or that the Association otherwise is

not entitled to judgment as a matter of law. DDI does not direct

the Court's attention to any evidence that would create a

dispute of material fact. Instead, DDI argues that summary

judgment is not appropriate because a claim for unjust

enrichment lies where an express contract does not exclusively

govern the obligations or rights of the parties. Even so, DDI

has not directed the Court's attention to any extra-contractual

obligations or rights that are at issue in this action; nor are

any such obligations or rights apparent to the Court.[3]

Here, there is an express written contract--the AIA

Agreement--that governs the relationship between the parties.

The AIA Agreement contains a number of provisions regulating the

relationship between the parties, including provisions

addressing compensation for any additional services provided by

DDI. (*See* ECF No. 1-1, at pg. 20, 27-28.) As such, the Court

---

[3] The parties agree that the AIA Agreement binds them. Although the oral
contract for doubling appears to be contested, the existence or non-existence
of that contract would not affect a *quantum meruit* claim based on the value
of the services provided.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 22

concludes that the AIA Agreement governs all of the obligations and rights of the parties that are implicated in this action.

Accordingly, the Court will grant summary judgment in the Association's favor on Count Five.

## IV.   CONCLUSION

For the foregoing reasons, the Association's motion to dismiss DDI's complaint for lack of subject matter jurisdiction will be denied. The Association's motion for summary judgment will be granted insofar as it sought summary judgment on Counts Three and Five of DDI's complaint. The Association's motion for summary judgment will be denied insofar as it sought summary judgment on Count Four of DDI's complaint. DDI's motion to dismiss the Association's counterclaim will be granted.

An appropriate Order follows.


S_____
        **Curtis V. Gómez**
        **District Judge**