```
            DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. THOMAS AND ST. JOHN

DAROFF DESIGN, INC. and DDI,    )
ARCHITECTS, PC,                 )
                                )
          Plaintiffs,           )
                                )   Civil No. 2014-74
          v.                    )
                                )
THE NEIGHBORHOOD ASSOCIATION,   )
INC.,                           )
                                )
          Defendant.            )
                                )
```

ATTORNEYS:

**Ravinder Nagi, Esq.**
**Mark Alan Kragel, Esq.**
Bolt Nagi PC
St. Thomas, U.S.V.I.
    *For the plaintiffs,*

**Maria Hodge, Esq.**
Hodge & Hodge
St. Thomas, U.S.V.I.
    *For the defendant.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

   Before the Court is the renewed motion of Daroff Design, Inc. and DDI Architects PC to dismiss the Neighborhood Association's counterclaim. Also before the Court is the motion of the Neighborhood Association, Inc. for summary judgment on

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 2

Count IV of Daroff Design, Inc. and DDI Architects PC's complaint.

### I.    FACTUAL AND PROCEDURAL HISTORY

Daroff Design, Inc. and DDI Architects PC (collectively, "DDI") are corporations incorporated in Pennsylvania. They each maintain their principal places of business in Philadelphia, Pennsylvania. DDI provides architectural and interior design services.

The Neighborhood Association, Inc. (the "Association") is a corporation incorporated in the U.S. Virgin Islands. It has its principal place of business in the U.S. Virgin Islands. The Association is an association of owners of fractional memberships at the Ritz Carlton in St. Thomas.

The Association hired DDI to provide services related to certain refurbishing projects, including the refurbishment of the Association's "Members' Club Lounge." The obligations of the parties were at the center of a written contract entered into by the Association and DDI (the "AIA Agreement").

DDI ultimately performed more services than the parties originally contemplated. As such, more fees were charged by DDI than originally contemplated. A substantial portion of the fees demanded by DDI remain unpaid. DDI and the Association

dispute whether these increased fees stem from DDI's failure to exercise due care in DDI's designs or stem from decisions made by the Association.

DDI and the Association mediated DDI's claims for unpaid professional fees. The mediation was unsuccessful. Subsequently, on August 26, 2014, DDI filed a six-count complaint against the Association in this Court. Count I asserts a claim for foreclosure of a construction lien. Count II asserts a claim for breach of contract (AIA Agreement). Count III asserts a claim for fraud in the inducement. Count IV asserts a claim for breach of oral contract. Count V asserts a claim for unjust enrichment/*quantum meruit*. Count VI asserts a claim for accounts stated.

The Association filed a motion to dismiss DDI's complaint. That motion was denied in a May 8, 2015, order. On June 23, 2015, the Association filed its answer to DDI's complaint and a counterclaim. In its counterclaim, the Association asserted two claims. Count I asserts a tort claim for negligent design against DDI. Count II asserts a breach of contract claim against DDI.

On July 23, 2015, DDI moved to dismiss the Association's claims for failure to state a claim on various grounds. Among

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 4

other things, DDI argued that the counterclaim was untimely, as the counterclaim was filed more than 14 days after the Court's May 8, 2015, order denying the Association's motion to dismiss. Shortly thereafter, on July 27, 2015, the Association filed a motion to dismiss DDI's complaint for lack of subject matter jurisdiction, or in the alternative, for summary judgment on Counts III, IV, and V of the complaint.

On March 31, 2016, the Court issued an order: (1) denying the Association's motion to dismiss for lack of subject matter jurisdiction; (2) granting the Association's motion for summary judgment with regard to Counts III and V of DDI's complaint; and (3) dismissing the Association's counterclaim as untimely.

Thereafter, the Association provided competent evidence to the Court indicating that it had filed its answer to DDI's complaint, and its counterclaim, within 14 days of learning of the Court's May 8, 2015, order denying the Association's motion to dismiss. On May 6, 2016, the Court vacated its March 31, 2016, order insofar as it dismissed the Association's counterclaim and reinstated the Association's answer and counterclaim.

Subsequently, on May 9, 2016, DDI renewed its June 23, 2015, motion to dismiss the Association's counterclaim.

## II.  DISCUSSION

### A. Motion to Dismiss for Failure to State a Claim

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker,* 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.,* 127 S.Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts

that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman,* 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.,* 127 S.Ct. at 1965).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy,* 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or ... vague statements." *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,*

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 7

*Inc.,* 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the opposing party. *See Bd. of Educ. v. Earls,* 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

#### A. DDI's Renewed Motion to Dismiss[1]

DDI argues that the Court must dismiss the Association's tort claim because, under the gist of the action doctrine, the Association's claims are only properly asserted as a breach of contract claim.[2]

Tort claims are barred under the gist of the action doctrine:

> when the claims are
>
> > (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where

---

[1] Although the Association was not provided with an opportunity to respond to DDI's *renewed* motion to dismiss, the Association previously responded to the arguments raised in the original motion to dismiss, *see* ECF No. 26. The renewed motion asserts the same grounds for relief as the original motion to which the Association already responded.

[2] DDI also argues that the breach of contract claim is barred by various clauses of the AIA Agreement. The Court is deferring consideration of this argument.

> > liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.
>
> > *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa.Super.Ct.2002) (internal citations omitted).
>
> *Addie v. Kjaer*, 737 F.3d 854, 865-66 (3d Cir. 2013).

In its tort claim, the Association alleges that:

> DDI negligently and carelessly performed services under the contract. Such negligence includes, without limitation, preparation of design drawings using incorrect measurements and calculations, and the failure to consult readily available drawings and other documents verifying existing conditions at the Fifth Floor Lounge.

(Counterclaim, ECF. No. 17, at ¶ 9.)

Essentially, the Association seeks recovery in tort for DDI's negligent performance of DDI's obligations under the AIA Agreement. Significantly, DDI's alleged tort flows directly, and here, necessarily, from the performance of services in the AIA Agreement. Thus, the gist of the Association's action is a breach of an obligation that arose out of a contract.

Nevertheless, the Association argues that the tort claim is not barred by the gist of the action doctrine because design professionals have an independent tort duty--in addition to any contractual duty--to not negligently perform their services. In

support of its argument, the Association cites to the Restatement (Second) of Torts § 299A, which states that "one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) of Torts § 299A (1965). That may be so in limited circumstances.

Indeed, in a related context, the Virgin Islands Supreme Court has held that, at least for statute of limitations purposes, a legal malpractice claim sounds in tort "when the malpractice action is based on an attorney's negligence." *Arlington Funding Servs., Inc. v. Geigel*, No. CIV. 2008-007, 2009 WL 357944, at *4 (V.I. Feb. 9, 2009) At the same time, however, the Virgin Islands Supreme Court has held that the same claim, for limitations purposes, sounds in contract "when the malpractice claim has as its basis an attorney's failure to perform a specific service that was contracted upon by the parties, *other* than the failure of an *implied* duty to exercise reasonable skill or diligence." *Id.* (emphasis added).

The Third Circuit has addressed this issue outside of the statute of limitations context. In *Bohler-Uddeholm Am, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001), the Third Circuit held that the gist of the action doctrine partially

precluded a misappropriation of trade secrets claim because the contract between the parties also prohibited the misappropriation of certain trade secrets and confidential information. *See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 106-07 (3d Cir. 2001). Thus, where, as here, a contract expressly requires the provision of professional services "in a manner consistent with that level of care and skill ordinarily exercised by members of the architectural and interior design profession practicing under similar conditions and circumstances,"[3] ECF No. 1-1, at 30, the claim

---

[3] On a motion to dismiss,

> a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Shaw,* 82 F.3d at 1220 (emphasis added); *see also Trump,* 7 F.3d at 368 n. 9 ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993)).

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).
    In the Association's tort counterclaim, it asserts that it and DDI entered into a contract for architectural design services. (Counterclaims, ECF No. 18, at ¶ 6.) This allegation is incorporated into the breach of contract counterclaim. (*Id.* at ¶ 13.) The Association has admitted that Exhibit 1 of the complaint is the contract between DDI and the Association. (*See* Answer, ECF No. 18, at ¶ 24 ("[The Association] . . . admits that the contract between the parties, Exhibit 1 to the Complaint, was executed in August, 2013.").)
    Nevertheless, the Association asserts in its opposition to the motion to dismiss that "the three exhibits attached to the motion have not been authenticated and at least two of them do not even bear what is alleged to be a valid signature by . . . [the Association]." (ECF No. 16, at pg. 7 n.4.) Only two exhibits are attached to the complaint, the AIA Agreement and DDI's Notice of Claim of a Construction lien. Presumably then, the Association intended to challenge the Court's consideration of the three documents that

must proceed in contract, not tort. *See Bohler-Uddeholm Am., Inc.*, 247 F.3d at 106-07.

In light of that authority and the record in this case, the Court finds that DDI's tort claim is barred by the gist of the action doctrine.[4] *See Addie*, 737 F.3d at 865-66; *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 106-07.

### B. The Association's Motion for Summary Judgment

In the Court's March 31, 2016, order, the Court denied the Association's motion for summary judgment with regard to Count IV of DDI's complaint. In its memorandum opinion, the Court found that the allegations in DDI's complaint had been admitted because the Association had filed an untimely answer to DDI's complaint. Because those admissions conflicted with the evidence presented in the Association's motion for summary judgment, the

---

together constitute the AIA Agreement, included as exhibit 1 to the motion to dismiss. These documents are the same three documents attached to DDI's complaint as Exhibit 1. (*See* ECF No. 23-2.)

The Association has, as noted, admitted that these documents constitute the contract between it and DDI. Because there is a judicial admission that these documents formed the contract between the parties, and the AIA Agreement is integral to the Associations counterclaims, the Court will consider the AIA Agreement while addressing the motion to dismiss.

[4] The Court also notes that the Association seeks to recover for economic loss without personal injury or property damage. To the extent that recovery for that sort of injury is sought in tort, it typically is barred by the economic loss doctrine. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008). Of course, because the Court holds that the tort claim is barred by the gist of the action doctrine, it need not address whether the tort claim is also barred by the economic loss doctrine.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 12

Court found that there was a genuine dispute of material fact with regard to Count IV of DDI's complaint and denied the Association's motion for summary judgment on that basis.

In light of the Court's May 9, 2016, order: (1) finding that the Association only received notice of the order denying its motion to dismiss on June 9, 2016, and that the Association filed its order within 14 days of receiving that notice, and (2) reinstating the Association's answer to DDI's complaint, the Court finds that it is appropriate to reconsider its order on the Association's motion for summary judgment, with regard to Count IV of DDI's complaint.[5]

In Count IV of its complaint, DDI alleges a breach of contract claim. In pertinent part, DDI alleges that:

> 95. A valid oral contract exists between the NA and DDI whereby the NA offered to pay DDI double the amount of DDI's earned professional fees if DDI were to keep working on the Project-despite the NA's lack of timely payment to DDI up to that point in time-and if DDI would accept payment after March 31, 2014, which offer DDI accepted.
>
> 96. The NA has materially breached that contract by, *inter alia,* failing to pay DDI double its outstanding earned professional fees.

(ECF No. 1, at ¶¶ 95-96.)

---

[5] The Court's reconsideration of this motion does not prejudice either party because the parties previously had an opportunity to respond to each other's arguments and have fully briefed the issues.

*Daroff Design, Inc. et. al. v. The Neighborhood Association, Inc.*
Civil No. 2014-74
Memorandum Opinion
Page 13

The Association moves for summary judgment on Count IV, arguing that there was no agreement to double DDI's billings. In support of its motion, it directs the Court to the affidavit of Salvatore Cutrona, Sr. ("Cutrona"). In his affidavit, Cutrona asserts that:

> 5. [At a meeting on October 24, 2015, he, Karen Daroff, and Robert Hilton] . . . discussed several options for payment for additional work that Daroff claimed had been done on the project. I told her that no payment would be made until the errors claimed had been properly addressed in billings to date. However, if for some reason DDI was correct that we would discuss payment options, including payment by and or after year-end. One of the payment options discussed was possible deferral of payment to the end of the year end and possible deferral to the end of March 2014. *In considering the latter payment option, discussion about possibly doubling the amount of the actual billings, if The Neighborhood Association, Inc., claims were invalid was proposed. I told Ms. Daroff and Mr. Hilton that I did not have the authority to commit to any of the proposals*, and that the decision would have to be made by the Neighborhood Association Board of Directors. I agreed to discuss the matter with the Board and get back to them with the Board's decision.
>
> 6. On October 28, 2013, I received an email from Robert Hilton confirming our discussions and acknowledging that I would need to discuss any payment options with the Board. Attached to the Motion to Dismiss as Exhibit 2 and incorporated herein by reference is a true and correct copy of an email from Mr. Hilton confirming the foregoing.
>
> 7. Also a part of that email thread is my immediate response to Mr. Hilton objecting that the Neighborhood Association Board had never authorized

> over $ 100,000 in additional work on the project and instructing Daroff to stop all work on the project until the issue was resolved.
>
> 8. *The Neighborhood Association Board of Directors never authorized me to accept any of the payment options discussed during that October 24, 2013 meeting.* Instead, we continued to have communications with Daroff regarding the status of Daroff's performance, including Daroff's errors in dimensioning certain items of work that resulted in additional cost to The Neighborhood Association.[6]

(ECF No. 24-3, at ¶¶ 5-8(emphasis supplied).) As such, the Association adduced evidence that there was no agreement to double DDI's billings. Therefore, the Association has met its burden of showing that there is no dispute of material fact and that it is entitled to judgment as a matter of law.

The burden now shifts to DDI to establish that there is a

---

[6] DDI contends that the Court may not consider this affidavit because: (1) it fails to comply with Virgin Islands procedural law, and (2) it is a sham affidavit.
   Valid federal statutes that prescribe procedural rules apply in federal court in diversity cases even if they conflict with local law. *See Stewart Org., Inc*, 487 U.S. at 26-27, 32. Federal law--specifically, 28 U.S.C. § 1746--provides rules for when a document may function as an affidavit in federal court. *See* 28 U.S.C. § 1746. Cutrona's affidavit complies with 28 U.S.C. § 1746.
   "A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Here, the Cutrona affidavit is offered in support of the Association's motion for summary judgment. As such, the sham affidavit rule does not apply. *See id.* If there is any inconsistency between the Cutrona affidavit and other evidence, the Association should have directed the Court's attention to that other evidence to show that there is a dispute of material fact.
   Accordingly, the Court will consider Cutrona's affidavit.

dispute of material fact or that the Association is not entitled to judgment as a matter of law. DDI has failed to adduce any evidence indicating that an agreement to double the billings existed. Instead, DDI filed the affidavit of James Rappoport ("Rappoport"). Rappoport is the "Vice-president and a principal of Daroff Design, Inc. and the Architect-of-Record for DDI Architects, P.C. . . ." (ECF No. 35-1, at ¶ 9.) In his affidavit, he asserts that:

> The total amount currently due and owing from The Neighborhood Association, Inc. for work performed and services rendered by Daroff Design, Inc. and DOI Architects, P.C.,is $155,761.46. A true and accurate copy of the Daroff Design, Inc. and DOI Architects, P.C.'s business record evidencing this invoiced amount is attached hereto and fully incorporated by reference herein as Affidavit Exhibit "A."

*Id.* Rappoport's affidavit does not contain any testimony establishing that there was an agreement, oral or written, to double the billings owed, or otherwise creating a genuine dispute of material fact.

Accordingly, the Court will enter summary judgment in favor of the Association on Count IV of DDI's complaint.

### IV. **CONCLUSION**

For the foregoing reasons, DDI's renewed motion to dismiss the Association's counterclaim will be granted insofar as it

seeks dismissal of the Association's tort claim. The Court will defer consideration of the remainder of DDI's motion to dismiss. The Court will also grant summary judgment in favor of the Association on Count IV of DDI's complaint.

An appropriate Order follows.

                                                              S\_____
                                                             **Curtis V. Gómez**
                                                             **District Judge**